1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

MANUEL PENALOZA,                          )   Case No. CV 13-8696-SP
                                          )
12                         Petitioner,    )   MEMORANDUM OPINION AND
                                          )   ORDER
13          v.                            )
                                          )
14                                        )
    G.D. LEWIS, Warden,                    )
15                                        )
                           Respondent.    )
16                                        )
                                          )
17   _____)

18                                    **I.**

19                            **INTRODUCTION**

20          On November 25, 2013, petitioner Manuel Penaloza filed a Petition for Writ

21   of Habeas Corpus by a Person in State Custody ("Petition").  Petitioner challenges

22   his 2011 convictions in the Los Angeles County Superior Court for two counts of

23   first degree murder, carjacking, and grand theft of an automobile, for which he was

24   sentenced to two terms of life without the possibility of parole, plus 50 years to

25   life, plus 12 years 8 months.

26          Petitioner raises three grounds for relief in the Petition: (1) insufficient

27   evidence to prove petitioner deliberated before killing the victims; (2) the

28

prosecution committed misconduct by misstating the facts and law, and petitioner's trial counsel was ineffective for failing to object to the prosecutorial misconduct; and (3) the evidence was insufficient to support petitioner's conviction for grand theft of an automobile, and petitioner's trial counsel was ineffective for conceding that the prosecution had proved the charge.  For the reasons discussed below, none of petitioner's claims merits habeas relief.  The Petition will therefore be denied.

## II.

## STATEMENT OF FACTS[1]

At about 11:00 p.m. on October 27, 2006, Francisco Regalado and Joey Malta (the decedents) were at petitioner's home in Highland Park.  The three were friends, but petitioner murdered Regalado and Malta in petitioner's detached bedroom by shooting each of them once in the head, i.e., near the right eye.  A dark circle around Regalado's gunshot wound was "muzzle tattooing," indicating the gun was touching, or extremely close to, Regalado's skin when petitioner fired the gun.  Regalado died within about three hours of the shooting.

At some point, petitioner put the decedents in a car.  Joanna Arellano testified she was Malta's girlfriend and had a close relationship with Regalado. Arellano had seen Regalado's car previously and had seen him drive it.  Arellano identified a photograph (People's exh. No. 3) as "the picture of Regalado, Frankie's car."

About 11:30 p.m., Heidi Muenzenmayer was driving in Pasadena when she saw a Honda colliding with objects.  The Honda's hood raised and the Honda was on fire.  The Honda stopped and petitioner climbed out one of its windows. Muenzenmayer identified photographs (People's exh. Nos. 2 & 3) as depicting the

---

[1]   The facts set forth are drawn substantially verbatim from the California Court of Appeal's decision on direct appeal.  Lodged Doc. No. 6 at 2-4 (footnotes omitted).  The Court of Appeal's statement of facts is presumed correct.  28 U.S.C. § 2254(e)(1); *Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

Honda. Muenzenmayer exited her car and approached petitioner to help. Petitioner told Muenzenmayer that he was drunk. He then carjacked her vehicle, seriously injuring her in the process. Petitioner later crashed Muenzenmayer's car into another vehicle, then left on foot. A paramedic summoned to the scene where petitioner had left the Honda saw Malta and Regalado inside it. The paramedic identified a photograph (People's exh. No. 2) as depicting the Honda. Malta was dead. Regalado was alive but later died.[2]

On October 27, 2006, a police officer searched petitioner's bedroom. The officer had been there on many previous occasions. On or about the above date, the bedroom was unusually clean. It was freshly painted, and it had been cleaned with bleach. A window was open, a ceiling fan was operating, and a rug had been removed. The blood of Regalado and the blood of Malta were found in the bedroom.

Petitioner was extradited from Mexico. On March 31, 2010, he told police the following. On the night of the shooting, petitioner was paranoid and high on drugs. He felt Regalado and Malta were disrespecting him, so petitioner fired two warning shots into the wall to scare them.[3] Regalado and Malta continued whispering stupid remarks. Petitioner, believing they were going to kill him, shot both with a .22-caliber gun he later discarded.

Petitioner also told police the following. After the shootings, petitioner

---

[2]   The medical examiner who conducted Malta's autopsy testified Malta had additional contusions on his body, but the medical examiner did not know how those injuries were caused and denied he was able to testify they were consistent with a fight or struggle. The medical examiner who conducted Regalado's autopsy testified Regalado had additional nonfatal injuries, and that medical examiner did not offer an opinion as to how those injuries were caused. Each medical examiner testified the decedent died as a result of a gunshot wound to the head.

[3]   A detective who examined the walls of the bedroom "right after" the shootings denied he had seen gunshots in the walls.

cleaned his bedroom with bleach.  He put the decedents in a car and stole it.[4]  The lady (later identified as Muenzenmayer) was at the wrong place at the wrong time. Petitioner entered her car and left.  The decedents had not deserved to die, and the shootings, like the injury to Muenzenmayer, were accidents.  Petitioner regretted he had not shot a person named Mata.  Petitioner still wanted to kill Mata because Mata had said things petitioner disliked.

In defense, Dr. Ronald Markman, a psychiatrist, testified petitioner had a history of drug use, and such use could cause paranoia, impulsive behavior, and aggression, and could impair deliberation.  Markman opined petitioner's actions were premeditated but not deliberated.

### III.

### PRIOR PROCEEDINGS

On September 21, 2011, a jury convicted petitioner of two counts of first degree murder (Cal. Penal Code § 187(a)), one count of car jacking resulting in great bodily injury (Cal. Penal Code §§ 215(a), 12022.7(a)), and one count of grand theft of an automobile (Cal. Penal Code § 487(d)(1)), as well as found true a multiple murder special circumstance (Cal. Penal Code § 190.2(a)(3) and gun allegations (Cal. Penal Code § 12022.53(d)).  Lodged Doc. No. 1, Clerk's

---

[4]   Petitioner gave conflicting statements as to whether he stole the car.  After petitioner told police he fired two shots at the wall, the following occurred: "[Petitioner:] . . . And then I shot them [unintelligible] and their attention.  And they got so fucking, they got so fucking two dead bodies. . . .  I just got the fuck out of there.  I don't know how, how . . . [¶] [Detective:] Remember . . . putting them in the car?  [¶]  [Petitioner:]  [Unintelligible]  [¶]  [Detective:]  Remember the car you put them into [petitioner]?  [¶]  [Petitioner:]  Fucking [unintelligible] someone's car right there, yeah.  [Unintelligible] fucking car.  They stole the fucking car.  I didn't, I didn't steal the fucking [unintelligible].  I stole it.  [¶] [Detective:]  It belonged to Francisco.  [¶]  [Petitioner:]  A GT or right there or . . . [¶]  [Detective:]  No, I don't know if he took the key off . . . he wasn't alive at the time to tell you, 'no.'  [¶]  [Petitioner:]  [Unintelligible]"

1    Transcript ("CT") at 224-27, 229; Lodged Doc. No. 1, Supplemental Clerk's

2    Transcript ("Supp. CT") at 6-9.  The trial court sentenced petitioner to two

3    consecutive terms of life without the possibility of parole, plus fifty years to life,

4    plus twelve years and eight months in prison.  Supp. CT at 1-9.

5    Petitioner, represented by counsel, appealed the conviction to the California

6    Court of Appeal.  Lodged Doc. No. 3.  Petitioner raised the following arguments:

7    (1) the evidence was insufficient to prove petitioner deliberated before killing the

8    victims; (2) prosecutorial misconduct for misstating the law and the evidence, and

9    ineffective assistance of counsel for trial counsel's failure to object to the

10   prosecutorial misconduct; and (3) insufficient evidence to support petitioner's

11   conviction for grant theft of an automobile, and ineffective assistance of counsel

12   for conceding guilt on the theft charge.  *Id.*  On October 4, 2012, the Court of

13   Appeal, in a reasoned decision, affirmed the judgment.  Lodged Doc. No. 6.

14   Petitioner filed a petition for review in the California Supreme Court,

15   presenting the same three claims.  Lodged Doc. No. 7.  On January 3, 2013, the

16   California Supreme Court summarily denied the petition for review.   Lodged Doc.

17   No. 8.

18                                          **IV.**

19                              **PETITIONER'S CLAIMS**

20   In the Petition, petitioner raises the following grounds for relief:

21   1.      Insufficient evidence to support a finding that petitioner deliberated

22           before killing the victims;

23   2.      (a) The prosecutor committed misconduct during closing argument by

24           misstating the law and the evidence, and (b) ineffective assistance of

25           trial counsel for failing to object to the prosecutorial misconduct; and

26   3.      (a) Insufficient evidence to prove grand theft of an automobile, and

27           (b) ineffective assistance of counsel for conceding petitioner was

28

guilty of this charge.

## V.

## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court looks to the last reasoned state court decision as the basis for the state court's justification. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the California Court of Appeal's opinion on October 4, 2012 stands as the last reasoned decision on Grounds One through Three(a). But although the California Court of Appeal provided a reasoned decision on Grounds One and Three(a), this court will conduct an independent review of the record because those claims present challenges to the sufficiency of the evidence. *See Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

In addition, with respect to a claim for which there is no reasoned state court decision, the federal habeas court will conduct an independent review of the record to determine whether the state court decision was contrary to, or an unreasonable

1  application of, controlling United States Supreme Court precedent. *See Haney v.*
2  *Adams*, 641 F.3d 1168, 1171 (9th Cir. 2011); *Allen v. Ornoski*, 435 F.3d 946, 954-
3  55 (9th Cir. 2006).  Even in the absence of a prior reasoned decision, however,
4  § 2254(d)'s limitations on granting habeas relief remain.  *Harrington v. Richter*,
5  562 U.S. 86, 98, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("Where a state court's
6  decision is unaccompanied by an explanation, the habeas petitioner's burden still
7  must be met by showing there was no reasonable basis for the state court to deny
8  relief.").  Because there is no reasoned decision on Ground Three(b), this court will
9  also conduct an independent review of the record to determine whether the state
10 court decision was objectively unreasonable as to this issue.

## VI.

## DISCUSSION

**A.**   **Petitioner Is Not Entitled to Habeas Relief on His Claims Regarding the**
       **Sufficiency of the Evidence**

In Ground One, petitioner challenges the sufficiency of the evidence to
support his first degree murder convictions, arguing that the evidence did not
establish deliberation.  In Ground Three(a), petitioner challenges the sufficiency of
the evidence to prove grand theft of an automobile.

In *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560
(1979), the United States Supreme Court held that federal habeas corpus relief is
not available to a petitioner who claims the evidence was insufficient to support his
conviction unless he can show that, viewing the record in the light most favorable
to the prosecution, "no rational trier of fact could have found proof of guilt beyond
a reasonable doubt."  In evaluating such claims, the court must presume, even if it
does not affirmatively appear in the record, that the jury resolved any conflicting
inferences in favor of the prosecution.  *Wright v. West*, 505 U.S. 277, 296-97, 112
S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (citing *Jackson*, 443 U.S. at 326).  Under

AEDPA, this court reviews the state court's decision "with an additional layer of deference," granting relief only when the state court's judgment was contrary to, or an unreasonable application of, the *Jackson* standard. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005). The court will not re-weigh evidence, reassess witness credibility, or resolve evidentiary conflicts on habeas review; that is the province of the jury. *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are . . . entitled to near-total deference under *Jackson*.") (citing *Schlup v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)); *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).

When presented with an insufficient evidence claim, the federal habeas court must apply the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Thus, the reviewing court first looks at state law to establish the elements of the crime. *See Juan H.*, 408 F.3d at 1278 n.14. The federal court then turns to the federal question as to whether the state court was objectively unreasonable in its application of *Jackson*. *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). The AEDPA and *Jackson* standards pose a "double dose of deference that can rarely be surmounted." *Id.*

### 1. **Deliberation**

In Ground One, petitioner argues the evidence presented at trial was insufficient to support his first degree murder convictions because it did not prove he deliberated before killing the victims. Petition at 6, Ex. A at 36-49, Ex. E at 147-59.

The California Court of Appeal rejected petitioner's claim, finding the evidence that petitioner was bothered by the victims' remarks, claimed to have fired warning shots, then shot both victims in the head without adequate provocation, did not seek medical help for the victims, and attempted to conceal

1  evidence of the crimes supported a finding of premeditation and deliberation.

2  Lodged Doc. No. 6 at 5-6.

3       In California, murder is of the first degree when it is willful, premeditated,

4  and deliberate.  Cal. Penal Code § 189.  The California Supreme Court recently

5  discussed the deliberation element in conjunction with the premeditation

6  requirement for first degree murder:

7          "In the context of first degree murder, premeditation means

8         "'considered beforehand'" (*People v. Mayfield* (1997) 14 Cal.4th 668,

9         767, 60 Cal.Rptr.2d 1, 928 P.2d 485) and deliberation means a

10        "'careful weighing of considerations in forming a course of action

11        . . .'" (*People v. Solomon* (2010) 49 Cal.4th 792, 812, 112 Cal.Rptr.3d

12        244, 234 P.3d 501).  'The process of premeditation and deliberation

13        does not require any extended period of time.'  (*Mayfield*, at p. 767,

14        60 Cal.Rptr.2d 1, 928 P.2d 485 [the true test of premeditation is the

15        extent of the reflection, not the length of time].)  "'Thoughts may

16        follow each other with great rapidity and cold, calculated judgment

17        may be arrived at quickly. . . .'" (*Ibid.*; *see id.* at pp. 767-768, 60

18        Cal.Rptr.2d 1, 928 P.2d 485 [where defendant wrestled the gun from

19        and fatally shot an officer during a brief altercation, the jury could

20        reasonably conclude that 'before shooting [the officer] defendant had

21        made a cold and calculated decision to take [the officer's] life after

22        weighing considerations for and against']; *People v. Rand* (1995) 37

23        Cal.App.4th 999, 1001-1002, 44 Cal.Rptr.2d 686 [aiming weapon at

24        victims whom shooter believed to be rival gang members constituted

25        sufficient evidence of premeditation and deliberation].)" (*People v.*

26        *Shamblin* (2015) 236 Cal.App.4th 1, 10, 186 Cal.Rptr.3d 257.)

27 *People v. Salazar*, 63 Cal. 4th 214, 245, 202 Cal. Rptr. 3d 368, 371 P.3d 161

28

(2016), *petition for cert. filed* (U.S. Nov. 10, 2016) (No. 16-6812).  The California Supreme Court also has explained that the killing of a victim "by a single gunshot fired from a gun placed against his head" is sufficient evidence of deliberation. *People v. Romero*, 44 Cal. 4th 386, 401, 79 Cal. Rptr. 3d 334, 187 P.3d 56 (2008) (execution-style murder sufficient to prove deliberation where victim "was killed by a single gunshot fired from a gun placed against his head").

Here, petitioner's actions were of the type considered by the *Romero* court to be proof of deliberation.  Pasadena Police Detective Keith Gomez testified that Malta appeared to have been shot in the head at close range, and that Regalado had a "contact shot" to his head.  Lodged Doc. No. 2 (Reporter's Transcript ("RT")) at 1012, 1018-19.  Both victims had been shot near their right eye.  RT at 1012, 1018. This would have required petitioner to approach the victims with a gun one at a time, point his gun in the same area on each victims' head, and fire.  The very nature of the wounds indicates petitioner engaged in a calculated execution-style murder.

In addition, in his interview with police, petitioner gave an account of the evening that indicated his thought process and reasoning for killing the victims. Petitioner explained that the victims had been disrespecting him and "fucking with [his] head." CT at 172-74.  Petitioner warned the victims to stop, possibly even firing warning shots, but when they did not stop he killed them.[5]  CT at 172-76, 178-79, 184.  This scenario involving a series of warnings before petitioner acted further supports a finding of premeditation and deliberation.

After shooting them, petitioner did not call for medical help for the victims, as he might have if the crime were truly impulsive or an accident.  Instead,

---

[5] Petitioner claimed he first fired two shots at the walls to scare the victims before shooting them in their heads.  CT at 178-79.  But the police did not find any bullet holes in the walls of petitioner's room, leaving petitioner's story of warning shots uncorroborated.  RT at 1229.

1   petitioner cleaned with bleach, painted portions of his apartment, and fled with the

2   bodies. *See* RT at 998-1000, 1024-28. This too supports the finding of

3   deliberation.

4        To the extent petitioner argues the jury should have given greater weight to

5   the defense expert's testimony that drug use may have prevented petitioner from

6   deliberating, petitioner is merely asking the court to re-weigh the evidence. The

7   court must not engage in such weighing of the evidence. *Marshall v. Lonberger*,

8   459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) (a federal habeas court

9   has "no license" to evaluate the credibility or reliability of a witness who testified

10  in state court); *Bruce*, 376 F.3d at 957 (a "jury's credibility determinations are []

11  entitled to near-total deference" on federal habeas review); *Walters*, 45 F.3d at

12  1358 (a reviewing court "must respect the province of the jury to determine the

13  credibility of witnesses"). The fact that there may also have been evidence to

14  support a different verdict does not mean the evidence was insufficient to support

15  the jury's finding that the murders were deliberate and premeditated.

16       All of this evidence, when viewed in the light most favorable to the

17  prosecution, was sufficient to prove petitioner deliberated before killing the

18  victims.

19       **2.    Grand Theft of an Automobile**

20       In Ground Three(a), petitioner argues the prosecution presented insufficient

21  evidence to prove petitioner guilty of grand theft of an automobile for taking

22  Regalado's Honda. Specifically, petitioner argues the prosecution failed to prove

23  the vehicle belonged to another and failed to prove petitioner drove the vehicle

24  away without the owner's consent. Petition at 6-7, Ex. A at 65-69, Ex. E at 174-

25  78.

26       The California Court of Appeal denied petitioner's claim on direct review,

27  finding sufficient evidence that the vehicle belonged to Regalado and that

28

petitioner took the vehicle by means of trespass and without Regalado's consent. Lodged Doc. No. 6 at 11-12.

Under California law, theft by larceny "is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away." *People v. Davis*, 19 Cal. 4th 301, 305, 79 Cal. Rptr. 2d 295, 965 P.2d 1165 (1998). Theft of an automobile is classified as grand theft. Cal. Penal Code § 487(d)(1).

First, petitioner's claim fails to the extent he argues the evidence did not prove who owned the Honda. Malta's girlfriend, who also was friends with Regalado, identified the Honda as belonging to Regalado. RT at 663, 673-74. Her testimony was not contradicted by any other evidence and thus was sufficient for the jury to conclude the Honda petitioner drove away from the crime scene belonged to Regalado.

Petitioner's claim also fails to the extent he argues the evidence did not support a finding that petitioner drove the Honda away without the owner's consent. First, the prosecution was not required to prove lack of consent, but rather had to prove petitioner took Regalado's vehicle by means of trespass. *See Davis*, 19 Cal. 4th at 305. Because "[t]he act of taking personal property from the possession of another is always a trespass unless the owner consents to the taking" of the property (*id.* (footnote omitted)), evidence of consent was material only to the extent petitioner could have used it as an affirmative defense. *See People v. Brock*, 143 Cal. App. 4th 1266, 1275 n.4, 49 Cal. Rptr. 3d 879 (2006) ("while a lack of consent is not an essential element of [theft by larceny], consent is an affirmative defense"). Thus, the prosecution was not required to prove that Regalado did not give consent for petitioner to drive his vehicle.

Moreover, even if the prosecutor was required to prove lack of consent, the

12

1    evidence was sufficient to support such a finding.  Petitioner shot Regalado in the

2    head before driving away in Regalado's car.  It was thus reasonable for the jury to

3    infer that Regalado was not physically capable of giving petitioner permission to

4    drive his car.  It was also reasonable for the jury to conclude that Regalado, even if

5    physically able to give consent, would not voluntarily have granted access to his

6    car to the man who had just shot him in the head.  Finally, when petitioner was

7    interviewed by police he admitted he "stole" Regalado's car.  CT at 179.  This

8    evidence was sufficient to support a finding that petitioner did not have Regalado's

9    permission to drive his car.

10        For these reasons, the state courts' denial of petitioner's sufficiency of the

11   evidence claims was not contrary to clearly established federal law or an

12   unreasonable determination of the facts.  Petitioner is therefore not entitled to relief

13   on Ground One or Ground Three(a).

14   **B.**    **Petitioner Is Not Entitled to Habeas Relief on His Claim of**

15           **Prosecutorial Misconduct**

16        In Ground Two(a), petitioner argues the prosecutor committed misconduct

17   during closing arguments by misstating the law and the evidence.  Specifically,

18   petitioner argues the prosecutor committed misconduct when (1) she analogized

19   deliberation to a driver of a vehicle entering an intersection and deciding whether

20   to stop or proceed, (2) described the manner in which petitioner killed the victims

21   without evidentiary support for her description, and (3) equated the intent to kill

22   with premeditation.  Petition at 6, Ex. A at 50-62, Ex. E at 163-72.

23        The California Court of Appeal denied petitioner's claim, finding that

24   petitioner forfeited his prosecutorial misconduct arguments by failing to object at

25   trial, and that in any event his claim failed on the merits because no prosecutorial

26   misconduct occurred.  Lodged Doc. No. 6 at 6-10.

27

28

1    **1.   <u>Ground Two(a) Is Procedurally Defaulted</u>**

2          Respondent argues that petitioner's claim is procedurally defaulted in light

3    of the state court's finding of forfeiture.  Answer at 16-19.

4          A federal court will not review a claim if a state court dismissed the claim on

5    an adequate and independent state law ground, whether substantive or procedural.

6    *Walker v. Martin*, 562 U.S. 307, 315-16, 131 S. Ct. 1120, 179 L. Ed. 2d 62 (2011);

7    *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640

8    (1991).  In order for the procedural bar to apply, the opinion of the last state court

9    rendering a judgment in the case must clearly and expressly state that its judgment

10   rests on a state law ground.  *Harris v. Reed*, 489 U.S. 255, 264 n.10, 109 S. Ct.

11   1038, 103 L. Ed. 2d 308 (1989); *Jackson v. Giurbino*, 364 F.3d 1002, 1006-07 (9th

12   Cir. 2004).  The Ninth Circuit has repeatedly held that California's

13   contemporaneous objection rule, which deems an objection forfeited if not raised

14   in a timely fashion, is an adequate and independent state ground for dismissal.  *See,*

15   *e.g.*, *Tong Xiong v. Felker*, 681 F.3d 1067, 1075 (9th Cir. 2012); *Paulino v. Castro*,

16   371 F.3d 1083, 1093 (9th Cir. 2004); *see also* Cal. Evid. Code § 353.

17          Here, the Court of Appeal "clearly and expressly" stated that petitioner

18   forfeited his claim by failing to object at trial.  Lodged Doc. No. 6 at 6.  Because

19   respondent has met the burden of pleading and proving the procedural bar is

20   adequate and independent, the burden shifts to petitioner to show cause for the

21   default and actual prejudice resulting from the alleged constitutional violation, or

22   that failure to consider the claim will result in a fundamental miscarriage of justice.

23   *See Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004) (citing *Bennett v.*

24   *Mueller*, 322 F.3d 573, 586 (9th Cir. 2003)); *see also Gray v. Netherland*, 518 U.S.

25   152, 162, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996).  Petitioner has not responded

26   to respondent's procedural default argument, and has not shown cause and

27   prejudice, or a fundamental miscarriage of justice.  As such, Ground Two(a) is

28

1    procedurally defaulted.

2        **2.    Ground Two(a) Also Fails on the Merits**

3        A petitioner's due process rights are violated when prosecutorial misconduct

4    "'so infected the trial with unfairness as to make the resulting conviction a denial

5    of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L.

6    Ed. 2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.

7    Ct. 1868, 40 L. Ed. 2d 431 (1974)); *see Drayden v. White*, 232 F.3d 704, 713 (9th

8    Cir. 2000).  To determine whether the misconduct violated due process, a

9    reviewing federal habeas court must consider the misconduct in light of the entire

10   proceedings.  *See, e.g.*, *Hall v. Whitley*, 935 F.2d 164, 165 (9th Cir. 1991)

11   (examining the prosecutor's remarks in context of the entire trial).  Even if the

12   prosecutor's conduct violates due process, habeas relief will only be granted if the

13   petitioner can establish that the misconduct had a substantial and injurious effect or

14   influence in determining the jury's verdict.  *Shaw v. Terhune*, 380 F.3d 473, 478

15   (9th Cir. 2004) (applying harmless error test of *Brecht v. Abrahamson*, 507 U.S.

16   619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), to prosecutorial misconduct

17   claims).

18       First, petitioner complains of the following statement by the prosecutor

19   during closing argument about premeditation and deliberation:

20           Now, let's talk about in real life, in our every day life, an

21       example of deliberation and premeditation to make it easy for you to

22       understand.

23           Every day as we drive, we make decisions.  We get to a stop

24       sign.  We get to railroad crossing.  And we decide, the first thing we

25       think about is, we got to look to the left.  We're at a stop sign.  We got

26       to look to the right.  And then we decide if it's safe for us to enter the

27       road.  We go forward.  Well, that split second decision, ladies and

28

gentlemen, is deliberation.  It is safe to enter, involves premeditation.
You weigh beforehand, "Should I enter the street?  Should I stop?"
That's premeditation.  So deliberation and premeditation, we use
every day in our lives.  We stop, we look left and right, we go
forward.  That's a split second of a decision that we make.  That
makes a deliberate and premeditated action of passing the stop sign or
stopping at the railroad.

RT at 1530-31.

The prosecutor's statement did not so infect petitioner's trial with unfairness
as to amount to misconduct.  The prosecutor's statement was merely an everyday
example of making a potentially life or death decision within a split second.  This
was not an incorrect statement of premeditation and deliberation under California
law. *See People v. Williams*, 16 Cal. 4th 153, 224, 66 Cal. Rptr. 2d 123, 940 P.2d
710 (1997) (deliberation can occur in "a split second"); *cf. Thompson v. Lewis*,
2011 WL 3443984, *8-9 (C.D. Cal. June 27, 2011) (no ineffective assistance of
counsel for failing to object to prosecutor's use of a stop sign example to
demonstrate premeditation and deliberation because it was not an incorrect
statement of California law).

Next, petitioner challenges the following statements by the prosecutor as a
comment on facts not in evidence.  The prosecutor initially argued:

That cold, calculated approaching of the victims with a loaded
firearm, pointing a gun to their heads, and firing that weapon is a
deliberation process.  He's thinking.  "They didn't get it.  They didn't
get my warning."  "What am I going to do?  I'm going to end this.
I'm going to show those guys what I need.  I need respect.  They can't
be fuckin' with my head anymore."

So he walked up to one of the victims, and he pulled the trigger.

16

1    And he pulled the trigger and shot him execution style.  It's not a shot

2    to the leg, to the arm, to the lower torso, up in the air to try to scare the

3    guys and say, "Get the fuck out of my house."  No, it's not.  As

4    Penaloza said, they were fuckin' with his head to a point where he had

5    to do something.  And what he did was an execution style murder of

6    the first victim.

7         But after he shot the first victim, he didn't stop.  He didn't stop

8    there.  He walked over to the second victim, he pulled the gun, the

9    same way, same location, right to the head, "boom."  Pulled the

10   trigger.  Another execution style [s]hot to the second victim's head.

11   And now why is the location of the wound important?  Because that

12   shows a cold, calculated deliberate intent to kill. . . .

13   RT at 1534-35.  The prosecutor later added to the argument:

14        The only person who goes to put the muzzle to the head of a

15   victim and pulls the trigger execution style is a person who

16   deliberated, and premeditated, and decided to kill.

17   RT at 1591.

18        Petitioner argues that there was no evidence to support the prosecutor's

19   arguments and that "[i]t was just as probable [petitioner] shot both men, without

20   deliberation, from a single stationary position in the small, cluttered room."

21   Petition, Ex. A at 56, Ex. E at 166.  Petitioner also argues the evidence did not

22   support the prosecutor's characterization of the killings as "execution style"

23   because petitioner did not force the victims into "a markedly indefensible position"

24   before killing them.  Petition, Ex. A at 56-57, Ex. E. at 166-67.

25        The prosecutor's comments were permissible inferences drawn from the

26   evidence presented at trial.  *See Menendez v. Terhune*, 422 F.3d 1012, 1037 (9th

27   Cir. 2005) (prosecutors may argue reasonable inferences from the evidence

28

presented).  While there was no evidence of the exact thoughts that went through petitioner's mind as he carried out the murders, or evidence that he had to walk up to each victim to shoot them in the head, these are reasonable inferences from the evidence.  It is not probable, as petitioner suggests, that he was able to shoot both victims in the head, near their right eyes, and from very close proximity, "from a single, stationary position."  Rather, it was reasonable for the prosecutor to infer that petitioner had to position himself near each victim as he carried out the killings.  It was also reasonable for the prosecutor to infer that the manner of killing suggested that petitioner deliberated before shooting the victims in the head.  Moreover, the prosecutor did not commit misconduct by characterizing the killings as execution style murders.  *See Romero*, 44 Cal. 4th at 401 (approaching victim without provocation and shooting him in the back of the head was "execution-style" killing).

Finally, petitioner argues the prosecutor improperly equated intent to kill with premeditation.  The prosecutor's statements, and the context in which they were made, are as follows.  The prosecutor first argued:

> Well, Dr. Markman, of course, got up on the stand and said, his interpretation and definition of deliberation is different than ours. There's only one interpretation, you know, of verbiage from the Penal Code deliberation.  And it's in the jury instruction.  And it says:
>
> > "Carefully weighing the consideration of pros and cons, and knowing the consequences of your consideration."
>
> Yes, Dr. Markman himself said that on cross-examination, that given that hypothetical, that person who he kept talking about how paranoid these people get, and how tweaked out these people get, he himself admitted that those people do their acts intentionally.  Intent.  And if you do an act intentionally, and if you then surround the intentional

act with his actions, his words, it screams out to you, deliberate,
premeditated first degree murder of Francisco Regalado and Joe
Malta.

RT at 1541.  The prosecutor later added to this argument:

> When you're looking at Joe Malta's gunshot wound, as Dr.
> Selser testified, it's right on his right eye.  And as she said, front to
> end, front to back, a little bit upward, just slightly upward.  Now why
> is that important?  That's important because that shows his specific
> intent.  That shows his execution style, deliberated, premeditated
> murder of Joe Malta.  That shows that he had to go up to Malta, put
> the gun to the eye, and pull the trigger in cold-calculated murder.

RT at 1549-50.

It is clear from the prosecutor's statements that she was not equating intent
to kill by itself with premeditation and deliberation.  Rather, the prosecutor was
arguing that evidence of petitioner's intent to kill, coupled with the circumstances
of the killings – "[petitioner's] actions, his words" –  demonstrated premeditation
and deliberation.  This was not misconduct, but merely was the prosecutor
presenting the evidence to the jury and arguing how the evidence supported the
elements of first degree murder.

For all the foregoing reasons, the state courts' denial of petitioner's
prosecutorial misconduct claim was not contrary to clearly established federal law
or an unreasonable determination of the facts.  Consequently, petitioner is not
entitled to relief on Ground Two(a).

**C.**   **Petitioner Is Not Entitled to Habeas Relief on His Claims of Ineffective Assistance of Counsel**

Finally, in Grounds Two(b) and Three(b), petitioner contends his trial
counsel was ineffective.  In Groung Two(b), petitioner faults counsel for failing to

object to the prosecutorial misconduct petitioner alleges in Ground Two(a).
Petition at 6, Ex. A at 62-64, Ex. E at 172-74.  In Ground Three(b), petitioner
argues his counsel was ineffective for conceding during closing argument that the
prosecutor had presented sufficient evidence to support the charge of grand theft of
an automobile.  Petition at 6-7, Ex. A at 68, Ex. E at 177.

The California Court of Appeal rejected claim Two(b) on direct appeal,
finding, because the prosecutor did not commit misconduct, petitioner's counsel
was not ineffective for failing to object.  Lodged Doc. No. 6 at 10-11 n.8.  The
Court of Appeal did not address claim Three(b).

The Sixth Amendment guarantees a right to effective assistance of counsel.
*See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674
(1984).  To establish an ineffective assistance of counsel claim, a petitioner must
establish:  (1) counsel's performance fell below an "objective standard of
reasonableness" under prevailing professional norms; and (2) the deficient
performance prejudiced the defense.  *Id.* at 687.  "The inquiry under *Strickland* is
highly deferential and 'every effort [must] be made to eliminate the distorting
effects of hindsight, to reconstruct the circumstances of counsel's challenged
conduct, and to evaluate the conduct from counsel's perspective at the time.'"
*Greenway v. Schriro,* 653 F.3d 790, 802 (9th Cir. 2011) (quoting *Strickland*, 466
U.S. at 689); *see also Earp v. Cullen*, 623 F.3d 1065, 1074 (9th Cir. 2010).

Regarding the first prong, there is a "strong presumption that counsel's
conduct falls within the wide range of reasonable professional assistance."
*Strickland*, 466 U.S. at 689.  As for the second prong, a petitioner must show a
reasonable probability that, but for counsel's unprofessional errors, the result
would have been different.  *Id.* at 694; *Towery v. Schriro*, 641 F.3d 300, 315 (9th
Cir. 2010).  "A reasonable probability is a probability sufficient to undermine
confidence in the outcome."  *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct.

1495, 146 L. Ed. 2d 389 (2000) (quoting *Strickland*, 466 U.S. at 694).  The focus of the prejudice inquiry is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993).

First, with respect to Ground Two(b), as discussed above the prosecutor did not commit misconduct during closing arguments.  Petitioner's counsel was not ineffective for failing to make a meritless objection.  *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) ("trial counsel cannot have been ineffective for failing to raise a meritless objection").

Second, with respect to Ground Three(b), petitioner correctly asserted his counsel conceded his guilt on the automobile theft charge.  *See* RT at 1577-78, 1582-83.  But as discussed above, the prosecution presented sufficient evidence to support petitioner's conviction for grand theft of an automobile, and petitioner presented no evidence to the contrary.  Under such circumstances, it was a reasonable strategy for petitioner's counsel to concede petitioner's guilt as to the relatively minor charge of grand theft of an automobile, so that counsel could maintain credibility with the jury and focus the jury's attention on the arguments against convicting petitioner of the much more serious first degree murder charges.

Moreover, even if counsel's strategy were unreasonable, petitioner cannot prove prejudice.  Again, the prosecutor presented sufficient evidence to prove petitioner guilty of grand theft of an automobile, and there was no contrary evidence.  Given the evidence, petitioner cannot show the jury's verdict would have been different had his counsel not conceded guilt on this issue.

Accordingly, the state courts' denial of petitioner's ineffective assistance of counsel claims was not contrary to clearly established federal law or an unreasonable determination of the facts. Therefore, petitioner is not entitled to relief on Grounds Two(b) and Three(b).

1

## VII.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: November 30, 2016

_____
SHERI PYM
United States Magistrate Judge

22